UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| DARRYL & TONJA HALL, | ) | No. 12 B 07352 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| DARRYL & TONJA HALL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 12 A 00765 |
| | ) | |
| BRENDAN FINANCIAL, INC., | ) | |
| | ) | |
| Defendant. | ) | Honorable Janet S. Baer |

MEMORANDUM OPINION

Darryl and Tonja Hall (the "Debtors") commenced the above-captioned adversary proceeding by filing a complaint under § 506(a) and Rule 3012 to determine the nature and extent of Brendan Financial, Inc.'s lien on their residence.[1] For the reasons set forth below, the Court finds that Brendan Financial's lien is wholly unsecured and can be "stripped off" of the Debtors' residence and treated as an unsecured claim.

**Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(K). The following constitutes the Court's findings of facts and conclusions of law under Rule 7052.

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

1

## Facts

The Debtors filed a chapter 13 petition for relief on February 28, 2012. On Schedule A of their petition, the Debtors listed their residence located at 3524 W. 72nd Place, Chicago, Illinois (the "Property").[2] The Debtors scheduled the value of the Property as $150,000.

On the petition date, the Property was encumbered by three mortgages. The parties do not dispute the priority or amount of the three liens. The first mortgage is held by Bank of America, N.A. in the amount of $131,018. The second mortgage is held by CitiFinancial in the amount of $19,778. Brendan Financial holds the third mortgage in the amount of $125,017.74.

The only dispute is the value of the Property. The Debtors argue that the aggregate value of the first and second liens—$150,796—exceeds the value of the Property and, thus, that there is no equity in the Property to which Brendan Financial's lien can attach. The Debtors submitted an appraisal completed by Thomas M. Collins ("Collins"), a certified residential real estate appraiser, valuing the Property at $145,000 as of August 10, 2012. Collins used the sales comparison approach to valuation and considered five comparable properties closely located to the Property in his calculation.

Brendan Financial disputes the Debtors' valuation of the Property. Brendan Financial submitted an appraisal completed by Michael Nunn ("Nunn") who, like Collins, is a certified residential real estate appraiser. Nunn relied on the cost approach to valuation and determined that the value of the Property was $197,600 as of September 23, 2012. Nunn also performed an analysis using the sales comparison approach. The sales comparison approach, according to Nunn, yielded a value of $151,000.

---

[2] The Court takes judicial notice of the docket in this case, including all documents and pleadings filed, all orders entered, and all arguments made at the hearings held before the Court during the pendency of this case. *See In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (authorizing a bankruptcy court to take judicial notice of its own docket).

The Court held an evidentiary hearing on October 4, 2012. Both Collins and Nunn testified at the hearing and described their respective qualifications, research, methods, and conclusions. The Court had an opportunity to evaluate the credibility and demeanor of both appraisers during extensive testimony, and to observe their composure, confidence, and consistency in responding to questions on cross-examination and on redirect.

At the conclusion of the evidentiary hearing, the Court reserved decision but also afforded the parties a final opportunity to settle this matter. For approximately six months, the parties engaged in settlement negotiations that ultimately proved unsuccessful. At the parties' request, the Court took this matter under advisement for ruling.

**Discussion**

The issue in this case is whether Brendan Financial's third priority lien is wholly unsecured and subject to being stripped from the Debtors' principal residence. "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ." 11 U.S.C. § 506(d). If a debtor's chapter 13 case is dismissed, then any lien voided under § 506(d) is reinstated. 11 U.S.C. § 349(b)(1)(C). Although the Seventh Circuit has not yet considered the issue, the Second, Third, Fifth, Sixth, Ninth, and Eleventh Circuit Courts of Appeals have held that a wholly unsecured junior mortgage is subject to strip-off pursuant to 11 U.S.C. § 506(d), notwithstanding the anti-modification protection afforded holders of home mortgages under 11 U.S.C. § 1322(b)(2). *See Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2d Cir. 2001); *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606 (3d Cir. 2000); *Bartee v. Tara Colony Homeowners Assoc. (In re Bartee)*, 212 F.3d 277 (5th Cir. 2000); *Lane v. Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002); *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002); *Tanner v. Firstplus Fin. (In re Tanner)*,

3

217 F.3d 1357 (11th Cir. 2000). For purposes of determining the nature and extent of Brendan Financial's lien in this case, the relevant date for valuation of the Property is the petition date, February 28, 2012. *See Marsh v. U.S. Dep't of Hous. & Urban Dev. (In re Marsh)*, No. 13 C 666, 2013 WL 979299, at *2 (N.D. Ill. Mar. 13, 2013).

With these standards in mind, the Court turns to the valuation of the Property. Valuation of assets is not an exact science; rather, it requires consideration of the purpose of the valuation and all the factual elements of a particular case. *In re Hernandez*, Ch. 13 Case No. 12 B 14383, Adv. No. 12 A 00748, 2013 WL 2152629, at *3 (Bankr. N.D. Ill. May 10, 2013). The Debtors bear the burden as the moving party to demonstrate that "there is not even one dollar of value" in the Property to support Brendan Financial's lien. *Id.* Once the Debtors' burden has been met, Brendan Financial must submit sufficient evidence to overcome the Debtors' valuation. *Id.*

### A. The Sales Comparison Approach

Both appraisers performed an analysis under the sales comparison approach. "Under the sales comparison approach the appraiser conducts a search of a similar real estate market to the subject property in order to find properties in similar situations to determine the value of the property in question. However, as each real property is unique the appraiser will make adjustments to account for the differences between the subject property and the comparable properties in order to determine the appropriate value of the subject property." *In re Whitney Lane Holdings, LLC*, No. 08–72076–478, 2009 WL 2045700, at *8 (Bankr. E.D.N.Y. July 6, 2009). Valuation is inherently subjective and depends on the judgment of the appraiser as to what constitutes a "comparable" property. "It is the role of the Court to sift through the appraisals and testimony and make a judgment as to the 'accuracy and credibility' of the appraisers." *Id.* at *2.

4

The Court was presented with two competing appraisals, each made by a qualified appraiser, stating slightly diverging values under the sales comparison approach. Collins valued the Property at $145,000, Nunn at $151,000. The Court finds that Collins' appraisal and testimony of value of the Property is more credible and persuasive than the appraisal and testimony provided by Nunn on behalf of Brendan Financial. Significantly, Collins inspected the interior of the Property; Nunn did not. Collins selected appropriate comparables. His adjustments to those comparables were justified and reasonable. In the Court's view, Collins' testimony supports his conclusion that the Property is worth $145,000.

**B. The Cost Approach**

In reaching a higher opinion of value, Nunn relied on the cost approach to valuation which considers, among other things, the value of the land and the replacement cost of any improvements. For the reasons stated below, the Court will disregard and place no weight on Nunn's opinion of value under the cost approach.

According to Nunn, "the cost approach is the most reliable for non income producing property having a limited market or with special purpose properties." Def.'s Ex. 1. Nunn opined that the Property was unique because it was a five-bedroom home in a predominantly three-bedroom-home neighborhood. The additional bedrooms are the result of a second-floor addition constructed in 2006. The Court finds unpersuasive Nunn's testimony on this point. The cost approach is not the best approach in this case because of the readily available comparables and the age of the improvements to the Property.

Collins testified very credibly that the cost approach lacked validity for this type of property and that the sales comparison approach was the best approach for appraising the fair market value of the Property. Hr'g Tr. 11:3–13:1, Oct. 4, 2012. When pressed, Nunn conceded

5

that he had to "keep with [the Uniform Standards of Professional Appraisal Practice] and include the sales comparison approach which, in most cases, when it comes to residential property, is the primary approach." Hr'g Tr. 54:9–12. In addition, Nunn testified that listing the Property for the amount determined by the cost approach would be useful to "recoup some of the construction costs," Hr'g Tr. 57:5–6, but that it would be unlikely for the Property to sell for that amount. Hr'g Tr. 58:10–16. Instead, the sales comparison approach would yield the most accurate value for purposes of selling the Property. Hr'g Tr. 57:2–9. Nunn included the sales comparison approach in his report specifically to avoid preparing a misleading report. Hr'g Tr. 55:7–15.

The Court finds that the sales comparison approach is the appropriate method of valuation for the Property. While both appraisers presented credible testimony and were well qualified experts in the field of residential appraisals, the Court finds that the appraisal submitted by Collins is more indicative of the Property's fair market value.

Based upon the evidence presented, the credibility of the witnesses, and the exhibits admitted in support of valuation, the Court finds that the value of the Property as of February 28, 2012 is $145,000. The amount owed on the first and second mortgages, $150,796, exceeds the value of the Property. Thus, there is no equity to which Brendan Financial's lien can attach.

## Conclusion

For the foregoing reasons, the Court finds that Brendan Financial's lien is wholly unsecured. Brendan Financial's interest is avoided as a lien on the Property. Brendan Financial shall have an allowed unsecured claim in the amount listed on its proof of claim, and said claim shall be paid as a general unsecured claim pursuant to the Debtors' plan. The lien avoiding effect of this strip-off, however, is conditioned upon the Debtors' successful completion of their chapter 13 plan and receipt of a discharge in chapter 13. Should the Debtors' underlying

bankruptcy case be dismissed or converted to a case under chapter 7, Brendan Financial's lien will remain intact. A separate order will be entered consistent with this Memorandum Opinion.

Dated: July 3, 2013

                                              Janet S. Baer
                                              United States Bankruptcy Judge